for argument now in the case of the United States against Oke. Mr. Stanton. Good morning. May it please the court, counsel. My name is Bill Stanton and I represent the defendant's appellants in this appeal which challenges the sufficiency of the evidence and the reasonableness of the sentences. The facts of this case are as follows. Two young ladies from the West African country of Benin came to the United States in 2014 with appellant Awoga. The girls subsequently lived in residential areas in Chicagoland with Awoga's daughters, Oke and Fandahan, where they were expected to perform household chores. At times the girls also worked braiding hair in a salon. The girls were housed and fed by the families who took them in. They were given clothing and all necessary items and they were compensated when they did braid hair. One of the girls, RO, ran away from this situation in 2016 while the other girl, FA, ran away in 2018. After running away, the girls eventually claimed that they were subjected to physical abuse as well as forced to complete domestic labor without compensation. The appellants were then charged with harboring concealing aliens, conspiring to do so in forced labor. The case proceeded to an initial trial in January of 2023 that resulted in a mistrial. A year later, in January 2024, the appellants were convicted of all five counts in the indictment. It is the evidence upon which those verdicts rest, with which the appellants take issue, as well as the lengthy sentences that were imposed. Understandably, in this forum, it's a heavy burden to challenge the sufficiency of the evidence, but here the evidence fell short of proof beyond a reasonable doubt. These two purported victims could not keep their stories straight and simply weren't credible, and the amount of impeachment that came out during the course of this trial was remarkable. Is there any dispute that neither child was allowed to go to school? There was a stipulation that neither child was sent to school. I don't think there was a stipulation as to the reasoning behind that, but I know the defendant did stipulate that neither child went to school. As it relates to the concealment and harboring, we contest that there was sufficient proof that significant measures were taken to conceal these girls. Specifically, where the girls went out in public at least twice a week, were often left home alone, they were not actively hidden, and the houses that they lived in were not designed to avoid detection of these girls. The times that these girls did go out in public, whether it be at a park, the lakefront, a restaurant, train rides, they didn't try to run away, they didn't mention this supposed abuse to anyone. It was only after the fact that they met with law enforcement agents and they had a benefit to gain that they made these claims. Also, as it relates to a pecuniary motive, which is what Okeh and Fandahan were charged with to keep the girls housed in the United States, I think if anything it was a symbiotic relationship. The girls were escaping poverty in their West African country and they were expected to perform household chores when they got here, which as I'll touch on later, they said they did out of respect for their elders. Turning to the forced labor aspect of the case, these girls were related to the appellants either by blood or by being members of the same church family. They both testified that they would be expected to perform chores out of respect for the adults, that discipline is inherent in their country, and that when they were prior to leaving their home country, they were expected to perform chores for their parents much like they did when they got here. But the statute requires that the appellants obtained labor by either actual harm or by threatening harm, and I think here the labor that was obtained wasn't by harm or by threats, but it was kind of in due course in consideration of the living arrangements that had been made. So they testified that they were beaten when they didn't do the chores, right? They testified at various points that they were beaten when they didn't do the chores or when they didn't do the chores correctly. Now you have testimony of a severe beating that takes place hours before one of the girls ends up at Lurie Children's Hospital. She's looked at by nurses, by doctors. They see some old scars on her and she had testified that she had been beaten with a fufu stick back in her home country, that that was normal, but nothing fresh, no injuries that would indicate that she had been viciously beaten hours before she ended up at that hospital. So while the testimony was, you know, if I left the laundry in the bowl for too long I'd get beaten, or if I didn't, if I fell asleep while I was taking care of the kids I'd get beaten, when there's actually someone to see evidence of injuries that would have occurred had these beatings actually taken place, they're conspicuously absent. So what we have here is irreconcilable differences between the tales that one of the girls told as opposed to the other girl, and it's our position that that contradictory evidence was unreliable, it was flimsy, and even in a light most favorable to the government, it did not amount to proof beyond a reasonable doubt. And I think the government's going to say, well, you know, these girls did admit to lying at one time or another, but those inconsistencies can be explained away. There was language barriers, or the girls were lying because they were scared and they were told to lie by the defendant's appellants, but for that to make sense when the girls do run away and they're in a safe environment, whether it be a hospital or a police station, and they continue to lie and lie and lie, that doesn't reconcile with the government saying that they only lied because they were in this supposedly dangerous environment. If they're now in a hospital or in police, not custody, but a police environment, you would expect them to say right away, this is what happened to me and this is why I'm here and this is why I ran away, but they continued to lie for days or weeks until the quote-unquote true story eventually came out. I see I'm running into my time for rebuttal. If there's no more questions, I'll reserve that time. Thank you. Thank you, Your Honor and the Counsel. Ms. Ardham. May it please the Court, Tiffany Ardham on behalf of the United States. Viewed in the light most favorable to the government, the evidence at trial was more than sufficient to support the jury's guilty verdict. The jury heard from two victims who were brought to the United States by the defendant at 12 years old and 14 years old. These victims were forced to live in the defendant's homes and work. They were mentally and physically abused. Their testimony was corroborated in multiple ways. Their testimony about coming to the United States with false identities and with individuals they did not know was corroborated by birth, flight, visa, and passport records. One of the victims' testimony about working in one of the defendant's salons was corroborated by undercover footage of the victim working in the defendant's salon with the defendant's children nearby. That victim's testimony was also corroborated by a law enforcement interview with the defendant where the defendant initially lied and said that the victim did not work in her salon but eventually admitted it once confronted by the evidence. Both victims' testimony was corroborated by stipulation that neither defendants allowed the victims to go to school and did not take them to a doctor once, despite taking both of their children to school and to doctors. One of the victims' testimony about what occurred after the law enforcement search was also corroborated. The victim testified that the defendants hatched a plan to take her to other individuals' homes to hide her from law enforcement. Toll and cell site record corroborated that victim's testimony. It showed that the individual associated with the phone the victim identified traveled from Wisconsin to the area of the defendant's home on the day of the law enforcement search after it had occurred and back. Both victims' testimony about escaping the defendant's grasp was similarly corroborated by the individuals that they encountered during their escape. And one of the victims' testimony about the abuse she endured was corroborated by the law enforcement witness, or I'm sorry, by the emergency room physician that treated her and determined and opined that the scars that she had were linear and that to her that meant they were suspicious for abuse. Lastly, each victim's testimony corroborated each other. The defendants' claims that the victim's testimony is insufficient because of these inconsistencies and that it renders their testimony incredible is simply not true. The questions of witness credibility are reserved for juries and should not be second-guessed unless the testimony is physically impossible or impossible by the laws of nature. Neither exception applies here. The defendants' credibility, I'm sorry, this defendants' credibility arguments were all aired before the jury. Both victims were subject to lengthy cross-examination that focused on their inconsistencies, their alleged motive to lie, and credibility. The jury was properly instructed on the factors that relate to the victim's credibility, and the jury heard three separate closings that focused, or at least touched on, the victim's inconsistencies and motive to lie. The jury chose to credit the victim's testimony, and as this court has previously stated, this is a judgment the jury is entitled to make. It should not be disturbed by this court. I'd like to touch on a couple of points. One is the argument that the victims were not actively concealed. In this case, the victims were 12 and 14 years old. They did not speak any English by the point that they escaped. They had no real ability to leave, and the defendants instructed them they could not leave the homes without them present, or they could not take out the trash before 2.30 because that would raise questions. These victims had no money and no access to phones that were unmonitored. They relied on the defendants for survival. The defendants additionally took active measures to conceal them. Defendant Oki hid one of the victims and lied to law enforcement on the day that they were there to search her home. That defendant similarly told that victim to go hide in the back of the salon when she saw law enforcement outside. The other victim was told by two other defendants that she should hide when outsiders were in the home, such as electricians. And as previously stated, neither victim was taken to see a doctor or to school for years. The jury similarly heard this argument that what the victims were required to do was just chores, and the jury rejected that argument. And that's because when these came here, all they did was work. They were the defendants' nannies, night nurses, housekeepers, and chefs. They did nothing other than work unless they were taken outside of the home with the defendants to care for their children. The nature of their work, and the amount of their work, and the relationship with the defendants is what makes this forced labor. The victims were forced to work. They were abused if they did not perform to the defendants' standards, and they had to work if they didn't have enough sleep, and they had to work if they were sick. And lastly, the defendant's counsel said that the victim stated this story once she escaped because she was aware of certain benefits that she could receive. Victim Aro's testimony, I believe, was that the night that she escaped, she was treated at Lurie Children's Hospital. She told them of the abuse. At that point, she did not speak English. She spoke through an interpreter. She testified that she was not aware of any benefits that she could receive, and that she additionally wanted to return home. So as it relates to her, there was absolutely no motive to lie the first time that she shared what had occurred to her. If there are no further questions, the government would request that the court affirm the judgment against the defendants. Thank you. Thank you, Counsel. Anything further, Mr. Stanton? Very briefly, Your Honor. Thank you. I would like to comment on a couple of the government's arguments as relates to active concealment, that these girls initially were 12 and 14 years old, and they were told not to leave home without an adult. Well, yes, they didn't speak English. They didn't know the area, and telling them not to leave home without an adult isn't concealing them, but concern for their safety. Another argument is that Appellant Oakey hid one of the victims in her home during a search by law enforcement. There were multiple law enforcement agents that conducted a search that day, every room, every nook and cranny of that residence, and didn't uncover anyone hiding in a closet. I would say that the relationship that these young ladies had with the defendant appellants is not what makes this forced labor. I would push back on that assertion and say actually the relationship is what makes this more of a chore scenario or more of household services out of respect than forced labor. I would be remiss if I didn't touch upon my second argument briefly as to the reasonableness of the sentences. I think that each of the sentences, while they were either within guidelines or below guidelines, were unreasonable from the standpoint that the cultural differences that were clearly apparent here were given short shrift by the district court and were not adequately taken into consideration. If there's no other questions, thank you for your time today. Thank you, counsel. The case is taken under advisement.